FILED
2016 Sep-22  PM 02:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **KERI PUTMAN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 4:16-CV-0061-RDP** |
| | } | |
| **CAROLYN W. COLVIN,** | } | |
| **COMMISSIONER OF** | } | |
| **SOCIAL SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Keri Putman brings this action pursuant to Section(s) 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB").  *See also*, 42 U.S.C. §§ 405(g).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

Plaintiff filed her application for a period of disability and DIB on October 1, 2012, alleging her disability began the same day. (Tr. 149). The Social Security Administration initially denied Plaintiff's application on January 30, 2013. (*Id.*) Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 149). Walter V. Lassiter, Jr. held the hearing on February 21, 2014. (*Id.*). In his decision, the ALJ determined that Plaintiff had not been under a disability within the meaning of § 205(g) of the Act from October 1, 2012 through the date last insured, March 31, 2013. (Tr. 149). The Appeals Council denied Plaintiff's request for review of

the ALJ's decision on November 12, 2015; therefore, the decision of the ALJ became final and properly a subject of this court's appellate review.

## II.    Facts

Plaintiff was 38 years old at the time of the hearing. (Tr. 266). She alleges disability since October 1, 2012 due to bipolar disorder I and degenerative disc disease. (Tr. 290). Plaintiff has one year of college education and past relevant work as a veterinary technician. (Tr. 177-78).

During her alleged period of disability, Plaintiff received treatment and evaluations from several physicians and psychologists regarding bipolar disorder, a mild essential tremor, asthma, generalized anxiety disorder, an eating disorder, degenerative disc disease, lumbar radiculopathy, and sciatica. (Tr. 151). Plaintiff had been treated by Dr. Glenn Archibald of Grandview Behavioral Health Centers for almost two and a half years at the alleged onset of the disability. (Tr. 494). At their first meeting, on April 14, 2010, Dr. Archibald diagnosed Plaintiff as bipolar with a "severe personality disorder." (Tr. 495). On May 17 of the same year, Dr. Archibald diagnosed Plaintiff as anorexic. (Tr. 427). From this time until the alleged onset of her disability, Dr. Archibald's notes demonstrate that Plaintiff fluctuated between improvement and decline in mental health. (Tr. 419-27). On the alleged onset date of Plaintiff's disability, Dr. Archibald noted that Plaintiff was more depressed and had suicidal ideations. (Tr. 418). Dr. Archibald further noted that Plaintiff's mental health had been complicated by her poor physical health. (*Id.*) Much later, on October 16, 2013, Dr. Archibald wrote a letter to the Social Security Administration stating that he had been treating Plaintiff for three years regarding her "Bipolar Disorder, Moderate, Generalized Anxiety Disorder and Eating Disorder." (Tr. 506). In the same letter, Dr. Archibald suggested that Plaintiff's deficits in ability to "maintain work activity" have existed since the alleged onset of her disability. (*Id.*)

2

Plaintiff also saw Dr. Michael Wiedmer of Anniston Orthopedics several times before and after the alleged onset of her disability. (Tr. 410-15, 477-78). At their first meeting on June 21, 2011, Dr. Wiedmer prescribed Plaintiff several medications to help treat her knee pain, back pain, and sciatica. (*Id.*) In August of 2012 Dr. Wiedmer noted that Plaintiff's back pain had been present for over a year and had progressed to include her leg, leading him to order an MRI of her lumbar spine. (Tr. 411). At the same consultation, just two months before the alleged onset of her disability, Dr. Wiedmer noted that Plaintiff "[s]tates she can do her job which requires stooping and lifting and this does not cause any difficulty." (Tr. 410). Plaintiff's MRI revealed "mild degenerative disc disease and degenerative facet changes." (Tr. 413). On a follow up visit, Dr. Wiedmer diagnosed Plaintiff with radiculopathy and sciatica, which he sought to manage with epidural blocks. (Tr. 414). Plaintiff returned to Dr. Wiedmer in April of 2013, after the alleged onset of her disability. (Tr. 477-78). Dr. Wiedmer noted that "[Plaintiff] had a motor vehicle accident a couple of weeks ago and [Plaintiff's back pain] has been more aggravated since then. Up until then it had been doing fairly well." (Tr. 478).

Plaintiff's asthma was diagnosed after a trip to the Anniston Medical Clinic emergency room on October 1, 2013. (Tr. 509). Dr. Saundra Dalton diagnosed plaintiff after presenting with an asthma attack that resulted in shortness of breath. (*Id.*) Dr. Dalton also treated Plaintiff on March 26, 2013 for a mild, intermittent tremor as well as mild vision change. (Tr. 469). Dr. Dalton noted that Plaintiff's tremors increased when attempting to concentrate on a task such as feeding herself with a spoon or applying eye shadow. (*Id.*) Dr. Dalton also noted that Plaintiff's changes in vision did not limit her activities and that she had no changes in gait. (*Id.*)

Dr. Sanders at RMC Neurology followed up on Plaintiff's tremor and vision changes on April 25, 2013. (Tr. 502). Plaintiff complained of suffering from the tremor for two years, that

her symptoms had gradually progressed, and that her brother, maternal grandmother, and grandfather had a similar tremor. (*Id.*) Plaintiff also described her vision changes – receiving a bulging sensation as if her eyes had been dilated, which results in periodic blindness that resolves after 30 minutes. (*Id.*) Plaintiff claimed this symptom had presented for one year. (*Id.*) Dr. Sanders concluded that while Plaintiff's tremor was consistent with essential tremor, she could not rule out Plaintiff's medications as a contributing factor. He further noted that Plaintiff did not have any feature of Parkinson's disease. (Id.) Dr. Sanders prescribed propranolol as needed for treatment of Plaintiff's tremor. (Id.) With regards to Plaintiff's eyesight, Dr. Sanders concluded that her symptoms were not consistent with migraines, stroke, or seizure. (Tr. 503).

Dr. Jessica Vincent followed up on Plaintiff's tremor and vision changes on July 18, 2013. (Tr. 499). Her conclusions were nearly identical to those of Dr. Sanders. Because Plaintiff's symptoms were mild, Plaintiff was not prescribed any new medications at that time. (*Id.*) Finally, after receiving an MRI and lumbar puncture, Plaintiff met with Dr. Vincent on October 22, 2013 to discuss her symptoms. (Tr. 546). Plaintiff indicated that since she had discontinued use of Depakote and Lamictal (medication which were prescribed by Dr. Archbald for treatment of Plaintiff's bipolar disorder) her tremor and vision problems had largely resolved. (Tr. 546, 485-96).

Dr. Morton Rickless and Dr. Robert Summerlin performed consultative examinations on January 28, 2013 and January 22, 2013, respectively. (Tr. 155). Dr. Rickless performed a physical examination, which concluded with a diagnosis of bipolar and low back pain. (Tr. 442). Dr. Rickless opined that Plaintiff "could sit and stand for reasonable periods of time. She could walk for some distances. Lifting and carrying limited due to back problems. She can carry light to medium weights. She can handle objects. No hearing or speaking limitations. She could

travel." (*Id.*) Because Dr. Rickless performed only a physical examination, he left any opinion as to the effect of her bipolar disorder undetermined. He noted however that Plaintiff "stated she stopped working [as a veterinary technician] due to the inability to lift the dogs and not because of her being bipolar." (*Id.*)

Dr. Summerlin's consultative psychological evaluation took place on January 22, 2013. (Tr. 436). Dr. Summerlin found that Plaintiff was oriented to person, place, time, and circumstance, had normal verbal responses, and responded well to several routine psychological tests. (Tr. 437). Plaintiff reported to Dr. Summerlin that she slept at least thirteen hours per twenty-four hours and that her depression, in conjunction with her medications, has caused her to gain thirty pounds in six months. (*Id.*) Dr. Summerlin concluded that Plaintiff had Bipolar I Disorder, a possible underlying personality disorder, and a GAF score of 60. (Tr. 437-38). He finally reported that Plaintiff had "significant variations in mood control… [which] could be viewed as a significant impediment to full-time, productive employment." (Tr. 438).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).   Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such

impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled.  20 C.F.R.  § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity from her alleged onset date through the date she was last insured. (Tr. 151). The ALJ determined that Plaintiff suffered from several severe impairments: bipolar disorder I, in partial remission; mild essential tremor (possibly secondary to medication), in partial remission; asthma; generalized anxiety disorder; eating disorder (possibly secondary to medications); mild

degenerative changes, lumbar spine, with small cyst at S2, with possible lumbar radiculopathy and sciatica." (*Id.*) The ALJ also listed several non-severe impairments Plaintiff suffered from: "history of transient blurred vision; gastro esophageal reflux disease; glaucoma; hepatic disease; mild scoliosis; cluster B personality disorder and/or other possible underlying personality disorders with self-defeating personality features; and history of pancreatitis." (Tr. 153). The ALJ concluded, however, that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 154).  The ALJ considered the "paragraph B" criteria and found that Plaintiff's condition did not satisfy those requirements. (*Id.*) The ALJ's findings were substantially consistent with the findings of Dr. Estock, the State Agency medical consultant. (Tr. 155). Dr. Estock found that Plaintiff could understand and remember simple instructions, carry out those instructions, and attend to simple tasks for 2 hour periods with breaks and rests during a regular workday. (Tr. 154). He also found that Plaintiff's interactions both with the general public and with the people she works with should be casual and that she may miss 1-2 days of work a month due to her psychiatric symptoms. (*Id.*)

The ALJ also gave significant weight to the opinion of Dr. Rickless who performed the physical consultative evaluation of Plaintiff on January 28, 2013. (Tr. 155). Dr. Rickless found that Plaintiff "could sit and stand for reasonable periods of time… walk for some distances," that her ability to lift and carry was limited due to back problems, but that she could carry light to medium weights. (*Id.*) The ALJ determined that although Plaintiff stated she had stopped working because of her inability to lift dogs and not because of her bipolar disorder, Dr. Rickless's assessment and Plaintiff's other statements contradict that statement. (*Id.*)

The ALJ also gave some weight, but not significant weight, to the consultative psychological examination of Plaintiff performed by Dr. Summerlin. (Tr. 155-56). Dr. Summerlin had previously examined Plaintiff in 2008, but thereafter Plaintiff saw Dr. Archibald. (Tr. 155). Dr. Summerlin diagnosed Plaintiff with bipolar disorder I, a possible underlying personality disorder, "psychosocial and environmental stressors of unemployment and chronic emotional issues," and a GAF score of 60 indicating moderate emotional symptoms. (Tr. 156). He opined that Plaintiff had "significant variations in mood control," which "could be viewed as a significant impediment to full-time, productive employment." (*Id.*) Because Dr. Summerlin's GAF score of Plaintiff was 60, other findings in Dr. Summerlin's consultation suggested healthy mental ability, Plaintiff herself stated that she stopped working because of physical disability and not because of her bipolar disorder, and other medical evidence in the record as a whole suggesting she could work, the ALJ gave Dr. Summerlin's opinion only some weight. (*Id.*)

The ALJ then determined that Plaintiff had the RFC

to perform light work as defined in 20 CFR 404.1567(b) except the claimant can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can frequently use her lower extremities for the operation of foot controls. The claimant can frequently use her upper extremities for reaching overhead. The claimant does not suffer any additional limitation involving her upper extremities. The claimant can occasionally climb ramps and stairs. The claimant cannot climb ladders, ropes, poles, or scaffolds. The claimant can frequently balance and stoop. The claimant can occasionally kneel and crouch. The claimant cannot crawl. The claimant can occasionally work in humidity, wetness, and extreme temperatures. The claimant can occasionally work in dusts, gases, odors, and fumes. However, she cannot work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant cannot work with operating hazardous machinery. The claimant can occasionally operate motorized vehicles. The claimant can occasionally work while subject to vibration. The claimant cannot perform work activity that requires her response to rapid and/or frequent multiple demands. Changes in her work activity and/or work setting must be infrequent and gradually introduced. The claimant can respond appropriately to supervision. The claimant can also perform work activity that

requires only occasional supervision. The claimant can occasionally interact with coworkers, so long as interaction is casual. The claimant cannot perform work activity that requires interaction with the public.

(Tr. 159-60).

Following this determination, the ALJ found that Plaintiff was not able to perform any past relevant work. (Tr. 162). Finally, the ALJ found that given Plaintiff's RFC, age, education, and work experience, jobs existed in significant numbers in the national economy that she was able to perform. (Tr. 163). The ALJ relied on the testimony of the Vocational Expert ("VE"). (*Id.*) The VE testified that several jobs existed that a hypothetical person with the Plaintiff's RFC, age, education and work experience could perform. (Tr. 193-94). These include a sorter, 2,500 such jobs in Alabama, 130,000 in the U.S.; a packer, 2,600 in Alabama, 205,000 in the U.S.; a folder, 1,000 in Alabama, 50,000 in the U.S.; and, if limited to simple, routine work, the sedentary jobs of machine tender, 1,200 in Alabama, 25,000 in the U.S.; a sedentary folder, 1,400 in Alabama, 174,000 in the U.S.; and machine operator 1,500 in Alabama, almost 60,000 in the U.S. (*Id.*) Based on these findings, the ALJ determined that Plaintiff was not disabled from the alleged onset date, October 1, 2012 through the date last insured, March 31, 2013. (Tr. 164).

## III.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. 31, 33). Plaintiff presents several arguments: (1) the ALJ is biased against social security claimants and his bias tainted his decision in denying benefits to Plaintiff; (2) the ALJ failed to accord proper weight to the opinions of treating psychiatrist Dr. Archibald and failed to state specific reasons for rejecting his opinions; (3) the ALJ erred in assigning more weight to a non-examining physician, Dr.

Estock, than the examining physician, Dr. Archibald; (4) the ALJ's decision was not based on substantial evidence; and (5) the Appeals Council refused to review new evidence solely because it was dated after the ALJ decision without determining whether the records were chronologically relevant. (Pl.'s Mem. 2). The court addresses each of these arguments below.

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.     **Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

A.     **The ALJ's Decision Was Not Affected by a Bias Against Plaintiff.**

Plaintiff alleges that the ALJ is biased against Social Security claimants, as demonstrated by his low percentage of favorable decisions and by his substitution of his own opinion in place of Plaintiff's treating physician, Dr. Archibald. (*See* Pl.'s Mem. 23). A presumption exists that judicial and quasi-judicial officers such as ALJ's are unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982). This presumption may be overcome by "a showing of a conflict of interest or some other specific reason for disqualification," but the burden for such a showing is on the party asserting such bias. *Id.* at 195-96. The Eighth Circuit and several district courts have held that an ALJ's low approval rate is insufficient in and of itself to show bias. *See Perkins v. Astrue*, 648 F.3d 892, 903 (8th Cir. 2011); *see also Barry v. Colvin*, No. 1:13-cv-00089-MP-GRJ, 2014 WL 2991089, at *9 (N.D. Fla. July 1, 2014); *Doan v. Astrue*, No. 04CV2039 DMS (RBB), 2010 WL 1031591 (S.D. Cal. Mar. 19, 2010); *Grant v. Comm'r Soc. Sec.*, 111 F. Supp. 2d 556, 558-89 (M.D. Pa. Aug. 23, 2000). An allegation of general bias is irrelevant if there is no indication of error in a plaintiff's particular case. *Allenstein ex rel. Estate of Small v. Barnhart*, 419 F. Supp. 2d 1336, 1337 (N.D. Ala. 2006) ("Because substantial evidence supports the ALJ's decision, and there is no indication that the record was not properly developed, the decision of the Commissioner must be affirmed.").

While the ALJ's approval rate is significantly below that of other ALJ's in Montgomery, this statistic alone is not enough to overcome the presumption that ALJ Lassiter is unbiased. The

court agrees with Plaintiff's citation of the Eleventh Circuit that because of the high standard of review with which this court must view Plaintiff's appeal "[t]he impartiality of the ALJ is thus integral to the integrity of the system." *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). However, Plaintiff does not assert sufficient evidence for this court to doubt the impartiality of the ALJ.

Plaintiff asserts that ALJ Lassiter, among other accusations, "willfully ignores established law, disregards evidence from treating physicians, and effectively holds claimants to a higher evidentiary standard than what is set forth by the law." (Pl.'s Mem. 24). Although these accusations are serious and would warrant a grant of Plaintiff's appeal, Plaintiff has neither provided evidence of such a scheme throughout the many cases the ALJ has denied, nor noted sufficient evidence of such behavior in her own case. Plaintiff only makes the conclusory statement that the ALJ substituted his own opinion for that of Dr. Archibald, Plaintiff's treating psychiatrist. (Pl.'s Mem. 23). The weight given to the opinion of Dr. Archibald is the subject of other allegations made by Plaintiff that the court has decided below. Because the court finds that the ALJ gave proper weight to the opinion of Dr. Archibald, the court concludes that Plaintiff failed to indicate any error in Plaintiff's case and thus, her accusation of the ALJ's general bias is unfounded. *See Allenstein ex rel. Estate of Small*, 419 F. Supp. 2d at 1337.

**B.      The ALJ Gave Proper Weight to Dr. Archibald's Opinion and Gave Specific Reasons for Rejecting Them.**

Plaintiff argues that the ALJ did not give sufficient weight to the opinion of Dr. Archibald and failed to adequately state his reasoning for doing so. An ALJ must give the opinion of a treating physician "substantial weight" in determining disability. *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). An ALJ may decline to give substantial weight to the opinion of a treating physician, but only if good cause is shown for doing so. *Lewis v.*

*Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause may be found "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding" as well as "where the doctors' opinions were conclusory or inconsistent with their own medical records." *Id.*

The ALJ stated that he gave Dr. Archibald's opinion "some, but not great weight." (Tr. 157). The ALJ found that the evidence supported a finding contrary to the opinion of Dr. Archibald. (*Id.*) Specifically, the ALJ noted that Dr. Archibald's opinions were "grossly inconsistent" with the findings of Plaintiff's neurologists, Dr. Sharman R. Sanders and Dr. Jessica Vincent. (Tr. 157, 522-548). Plaintiff saw her neurologists in April, July, and October of 2013 and made several phone calls to them about her symptoms and medications in the intervening months. (Tr. 522-548). At each visit, Plaintiff's neurologists, under "mental status," stated Plaintiff's "recent and remote memory is intact. Attention span, concentration, language, and fund of knowledge sufficient." (Tr. 526, 533, 547). Drs. Vincent and Sanders also noted that by Plaintiff's October visit, her temporary blindness no longer occurred and her tremor had been largely resolved thanks to changes in medication. (Tr. 546). Plaintiff reported no continuing physical symptoms or other symptoms that might affect her ability to work.

Plaintiff argues that although the ALJ stated no doctor other than Dr. Archibald had reported any diminished mental capacity in Plaintiff, Dr. Summerlin, a treating and examining psychologist, in fact reported a similar diminished mental capacity. (Tr. 157). Dr. Archibald noted Plaintiff had a "marked" impairment in the areas of concentration; ability to respond to customary work pressures; understand, carry out, and remember instructions; respond appropriately to supervision; respond appropriately to co-workers; and perform simple or repetitive tasks. (Tr. 560). Plaintiff claims a similar finding of diminished mental capacity in Dr.

Summerlin's statement that Plaintiff was often unable to control her mood. (Tr. 438). This opinion was given after Dr. Summerlin found Plaintiff to be "oriented in regards to person, place, time, and circumstance." (Tr. 437). He also stated Plaintiff's "thought processes were logical coherent, and focused; her thought content was responsive to questioning without evidence of interference from a psychotic process." (*Id.*) Dr. Summerlin also gave Plaintiff a GAF score of 60, in the high range for moderate emotional symptoms. (Tr. 438). These objective factors all contradict the "marked" impairments Dr. Archibald found. Thus, Dr. Summerlin's opinion regarding Plaintiff's control over her mood, while significant, is not understood by this court to be a statement of her diminished mental capacity as Plaintiff contends.

Because objective evidence and the opinions of other treating and examining physicians conflict with Dr. Archibald's conclusions as to Plaintiff's mental capacity, and because his reasons for doing so are supported by substantial evidence, the court finds that the ALJ had good cause for giving only moderate weight to Dr. Archibald's conclusions.

**C.     The ALJ Did Not Err by Giving More Weight to Dr. Estock's Opinion Than Dr. Archibald's Opinion.**

Plaintiff contends that the ALJ erred in giving more weight to the opinion of a non-examining physician, Dr. Estock, than the opinion of Dr. Archibald, an examining physician. (Pl.'s Mem. 31). Plaintiff's argument is without merit. State agency medical and psychological consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in [Social Security claims]." SSR 96-6p, 1996 WL 374180, at *2 (S.S.A.). Their opinions should be given weight "insofar as they are supported by evidence in the case record." *Id.* The more consistent with the record an opinion is, the more weight it should be given. *Jarrett v. Comm'r of Soc. Sec. Admin.*, 422 F. App'x 869, 873 (11th Cir. 2011) (reasoning that the ALJ properly gave more weight to the opinions of non-examining physicians that were

more consistent with the record than the opinion of a treating physician); 20 C.F.R. § 404.1527(c)(4). Even if a non-treating physician is unable to review the entire record, the ALJs decision may still rely on that physician's opinion when it cites to the record and the ALJ may disagree with that opinion. *See Cooper v. Comm'r of Soc. Sec. Admin.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not give undue weight to the opinion of a non-treating physician because the ALJ did not unconditionally accept the physician's findings, was able to review the entire record, and found greater limitations than the physician's opinion suggested).

The ALJ stated that he substantially agreed with Dr. Estock's opinion because "he provided specific reasons for his opinions indicating that these opinions were grounded in the evidence of record." (Tr. 155). Dr. Estock was able to examine the record as it existed prior to evidence being received at the ALJ hearing. (*Id.*) The ALJ found that the further evidence entered into the record would not have significantly altered Dr. Estock's findings as to Plaintiff's functional limitations. (*Id.*) The ALJ disagreed with Dr. Estock's findings of Plaintiff's impairments in part however, and concluded that Plaintiff had impairments under 12.04, 12.06, and 12.08. (*Id.*)

Although Dr. Estock was a non-examining physician, because his findings were more consistent with the record, they were properly given more weight than the opinion of Dr. Archibald. As discussed above, Dr. Archibald's opinions were, in many respects, inconsistent with both his own treatment record of Plaintiff and the record as a whole. Further, because the ALJ found further impairments than Dr. Estock's opinion suggested, it is evident that the ALJ did not unconditionally accept the non-examining physician's opinion. The ALJ considered the record as a whole and gave weight to Dr. Estock's opinion only as it conformed to the evidence

in the record. For these reasons, the ALJ properly gave greater weight to Dr. Estock's opinion than the opinion of Dr. Archibald.

### D.    The ALJ's Decision Was Based on Substantial Evidence.

Plaintiff next argues that the ALJ's decision was not based on substantial evidence. Plaintiff's argument relies on her belief that the VE's testimony did not constitute substantial evidence because the hypothetical the ALJ used did not accurately state Plaintiff's RFC. (Pl.'s Mem. 33). Because the ALJ's hypothetical person had all of the same impairments the ALJ listed in Plaintiff's RFC, the court finds that Plaintiff's true contention is with the RFC assigned by the ALJ. However, Plaintiff only summarily states that the hypothetical question "did not fully state plaintiff's impairments and limitations," and fails to reference any evidence why other impairments or limitations should have been included.

It is Plaintiff's burden to prove her disability. *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007). Although Plaintiff may provide evidence such as the statement of a physician containing an opinion of her remaining abilities, the ALJ maintains the ultimate determination of disability in light of such statements and all other evidence. *Id.* The determination of RFC is not a medical finding, but an administrative finding reserved to the Commissioner. *See* 20 CFR §§ 404.1527(e), 416.927(e); SSR 96-5p, 1996 WL 374183, at *2 (S.S.A.). In determining RFC, "the ALJ must determine if the claimant is limited to a particular work level." *Green*, 223 F. App'x at 923.

Once Plaintiff has proven that she cannot perform past work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that Plaintiff can perform despite her impairments. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). A VE's testimony constitutes substantial evidence when she testifies to specific jobs existing in the

national economy that a hypothetical person with all of Plaintiff's impairments could perform. *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005). If the ALJ determines that there are jobs Plaintiff is able to perform, Plaintiff must prove that she is unable to perform them in order to be found disabled. *Green*, 223 F. App'x at 923.

Here, the ALJ's determination of Plaintiff's RFC was based on Plaintiff's symptoms, objective medical evidence, and other evidence in accordance with 20 CFR 404.1529 and SSRs 96-4p and 96-7p. (Tr. 160). The ALJ also considered opinion evidence in accordance with 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (*Id.*) Although Dr. Archibald opined that Plaintiff did not have the RFC to continue full-time work, such a conclusion is only considered by the ALJ and is not conclusive. (Tr. 157). The ALJ considered Dr. Archibald's opinion along with the entire record in determining Plaintiff's RFC. (Tr. 154-62). The ALJ's findings regarding Plaintiff's pain were also based on the record as a whole. (Tr. 160). Specifically, the ALJ took into account Plaintiff's testimony regarding her pain, panic attacks, mood swings, and other symptoms. (Tr. 160-61). Based on this evidence, the ALJ found that although Plaintiff's impairments could reasonably cause Plaintiff's alleged symptoms, her statements regarding the limiting effects of these symptoms are not credible and did not lower Plaintiff's RFC. (Tr. 161). Based on these findings, the ALJ determined that Plaintiff could perform light work with some limitations. (Id.)

The ALJ also determined Plaintiff's RFC. (Tr. 159-60). The ALJ provided the VE with an exact statement of Plaintiff's RFC when presenting the VE with the hypothetical person. (Tr. 191-92). The VE's testimony regarding jobs available in the national economy was therefore based on a hypothetical person with the impairments of Plaintiff. Although the ALJ determined that Plaintiff could perform light work with some limitations, the ALJ also presented the VE with

a hypothetical person with Plaintiff's RFC, but was limited to only sedentary work. (Tr. 194). Even then the VE testified that there were several jobs such a person could perform. (*Id.*) The ALJ presented further hypotheticals to the VE regarding a person who was unable to sit, stand, or walk for six hours in an eight-hour workday, could be expected to miss more than two days of work in a month, or whose impairments, pain, and medications made them unable to sustain concentration, persistence, and pace for an hour and a half every two hours in an eight-hour workday. (Tr. 194-95). The ALJ did not accept these limitations, however, as part of Plaintiff's RFC and he was not required to do so as Plaintiff contends. Because the VE testified to specific jobs existing in the national economy and that testimony was based on a proper hypothetical, including all Plaintiff's impairments and RFC, the VE's testimony constitutes substantial evidence. *See Brooks*, 133 F. App'x at 670.

The ALJ, in accordance with the VE's testimony, found that there were jobs in significant numbers in the national economy that Plaintiff could perform (Tr. 163). Because this finding was based on the VE's testimony, the finding was based on substantial evidence. It is Plaintiff's burden to prove that she cannot perform the jobs the ALJ determined she could perform. *See Green*, 223 F. App'x at 923. Plaintiff contends that the ALJ should have included those impairments that the VE testified would have made her unable to work. (Pl.'s Mem. 34-35). She does not however argue *why* the ALJ was wrong in not accepting these hypotheticals as part of her limitations. For that reason, this court finds that she has failed to meet her burden and that the ALJ's determination that there were a substantial number of jobs in the national economy that Plaintiff could perform is supported by substantial evidence.

**E.     The Appeals Council Properly Determined That New Evidence Was Not Chronologically Relevant.**

Lastly, Plaintiff contends that the Appeals Council erred by refusing to review new evidence because it was dated after the ALJ decision rather than determining whether the evidence was chronologically relevant as required. Although Plaintiff does not state so, Plaintiff seeks remand under Sentence Four of Section 405(g) of the Act. Sentence Four standards apply when new evidence is supplied after the ALJ's decision but still during the administrative process. *See Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1267 (11th Cir. 2007). Because the Commissioner has already reviewed the evidence prior to denying Plaintiff's application for review of the ALJ's decision, this court will apply the Sentence Four remand standards. *Id.* Under this standard, Plaintiff is not required to show good cause for failing to present the evidence at an earlier time. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

The Appeals Council shall consider additional evidence that is "new and material… only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. 404.970(b). If the new, material evidence relates to the period on or before the ALJ's decision, the Appeals Council must evaluate the entire record. *Id.* If an evaluation of the entire record reveals that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record," the Appeals Council will then review the case and may alter or affirm the ALJ's determination. *Id.* This court must also "consider evidence not submitted to the administrative law judge but considered by the Appeals Council when [this court] reviews the Commissioner's final decision denying Social Security benefits." *Ingram*, 496 F.3d at 1258. This court must determine whether the new evidence affects the record as a whole so that the denial of benefits is erroneous. *Id.* at 1262. To do so, the court must determine whether the

Appeals Council correctly decided that the ALJ's "decision is [not] contrary to the weight of all evidence now in the record." (Tr. 1). *See* 20 C.F.R. § 404.970(b).

In the Notice of Appeals Council Action, the Appeals Council stated that it "considered the reasons [Plaintiff] disagree[s] with the decision in the material listed on the enclosed Order of Appeals Council," but that it nonetheless "found that this information does not provide a basis for changing the [ALJ's] decision." (Tr. 2). The order of Appeals Council stated:

> The Appeals Council has received additional evidence which it is making part of the record. That evidence consists of the following exhibits:

| Exhibit 9E | Representative Brief submitted by Gregory N. Norton dated May 6, 2014 |
| Exhibit 10E | Representative Brief submitted by Rose Marie Allenstein dated July 31, 2014 |
| Exhibit 11E | Representative Brief submitted by Rose Marie Allenstein dated July 31, 2014 |

(Tr. 6). Plaintiff's only argument regarding why these additional records should have caused the Appeals Council to remand the claim to the ALJ is that "records from Oxford Surgery Center substantiate low back pain and are chronologically relevant… records from Anniston Medical Clinic are only 2 weeks after the hearing and show GERD, anorexia nervosa, palpitations… [and] are chronologically relevant." (Pl.'s Mem. 36).

The court first addresses Plaintiff's contention that the Appeals Council "refused to review" additional evidence. (Pl.'s Mem. 34). Plaintiff cites *Epps v. Harris* in arguing that the Appeals Council "must show in its written denial that it has adequately evaluated the new evidence." (Pl.'s Mem. 38). *See Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980) (holding that the Appeals Council "merely noted" its consideration of additional evidence and found the ALJ to be correct). Here, the Appeals Council specifically acknowledged the new evidence but

stated that it did not provide a basis for changing the ALJ's decision. (Tr. 2). Although this may be boilerplate language, the Eleventh Circuit has previously found such a statement by the Appeals Council sufficient to demonstrate it did not err by failing to consider new evidence. *See Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir. 2010) (rejecting the plaintiff's argument that Appeals Council was required to explain in non-conclusory terms why additional evidence would have changed the ALJ's decision and instead finding that Appeals Council's statement of consideration of new evidence was sufficient); *see also Smith v. Comm'r of Soc. Sec. Admin.*, 272 F. App'x 789, 891 (11th Cir. 2008) (holding that because the Appeals Council stated that it had considered both why the plaintiff disagreed with the decision as well as the additional evidence, the Appeals Council did not err by failing to consider the new evidence); *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 743 (11th Cir. 2008) (mirroring the *Smith* holding).

Although *Epps* and other opinions since have found that automatic remand is warranted where the Appeals Council "perfunctorily adhere[s]" to the ALJ's decision, this court finds no reason to remand here. *Epps*, 624 F. App'x at 1273. First, the court distinguishes one of the most recent Eleventh Circuit opinions citing *Epps*.  In *Flowers v. Comm'r of Soc. Sec. Admin.*, 441 F. App'x 735, 745 (11th Cir. 2011), the court determined that the Appeals Council failed to adequately consider new evidence because "apart from acknowledging that [the plaintiff] had submitted new evidence, the Appeals Council made no further mention of it or attempt to evaluate it." *Id.* at 745.  However, the next sentence states "[f]urthermore, there is a reasonable possibility that [the plaintiff's] new evidence would change the ALJ's decision." *Id.* This court finds *Flowers* distinguishable because here, Plaintiff's new evidence would not provide a reasonable possibility of changing the ALJ's opinion.

Second, it is well-settled in this jurisdiction that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the decision is specific enough for the district court to find the ALJ considered the whole record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).  It follows that the Appeals Council has no greater duty than the ALJ to discuss with detail the evidence presented before it and used in the decision-making process.

Third, this case is not due to be remanded because this court agrees with the Appeals Council that, even given the new evidence presented to the Appeals Council by Plaintiff, substantial evidence supports the ALJ's findings. New evidence must be both material and chronologically relevant in order for the Appeals Council to be required to review the case. 20 C.F.R. 404.970(b). New evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). According to Plaintiff, the records of her epidural injections from Oxford Surgery Center ("Oxford") are material because they substantiate her claims of lower back pain. (Pl.'s Mem. 36). These records do not substantiate Plaintiff's claims of lower back pain because they do not provide any relevant evidence that the ALJ was unaware of at the time of his decision. As summarized by Plaintiff, the records indicate that Plaintiff received a "[l]umbar epidural steroid injection," which she tolerated well. (Pl.'s Mem. 35-36). At the Plaintiff's hearing, the ALJ specifically inquired into the epidurals Plaintiff was receiving at that time. (Tr. 197-98). Plaintiff testified that the epidural "does well for a short period of time. It does help a little bit." (Tr. 198). Thus, the fact that Plaintiff received an epidural was already known by the ALJ at the time of the hearing and did not change the administrative result. The Oxford records also contained a diagnosis pre- and post-operation that suggested lumbar

radiculopathy and lumbar degenerative disk disease. (Pl.'s Mem. 35, 26). Both of the diagnoses Plaintiff received from Oxford were not only already present in the record the ALJ was able to review, but were also included in the ALJ's listing of Plaintiff's severe impairments: "mild degenerative changes, lumbar spine… with possible lumbar radiculopathy and sciatica." (Tr. 151). The ALJ was already aware of these diagnoses and agreed that Plaintiff suffered from the impairments. For these reasons, the Oxford medical notes are not material.

New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). Both parties mistakenly assume that the Appeals Council determined that the new evidence was not chronologically relevant. (Pl.'s Mem. 35; Def.'s Mem. 26). However, at no point in the Notice of Appeals Council Action is that finding stated. The Appeals Council only states "this information does not provide a basis for changing the [ALJ's] decision." (Tr. 2) The Appeals Council went on to explain that the ALJ "decided your case through March 31, 2013, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits." (*Id.*)

The Oxford epidural procedures in the report occurred on October 2, 24, and November 14, 2013 and July 23, 2014. (Tr. 46-130). Three of the four procedures occurred then *before* the ALJ hearing decision in April, 2014. Thus, at least the reports from the three procedures before the decision were chronologically relevant, because it relates to a period before the date of the ALJ's hearing decision. The Appeals Council's decision, however, concludes that, adding to the immateriality of this evidence, the reports only concerned the Plaintiff's symptoms 7 to 16 months after the date she was last insured. Plaintiff's date last insured was March 31, 2013. This

gap in time, along with the fact that the ALJ was already aware of Plaintiff's diagnoses and epidural treatments, makes the Oxford reports immaterial, but still chronologically relevant.

The final piece of evidence Plaintiff contends should have been considered by the Appeals Council is a report from the Anniston Medical Clinic from May 13, 2014. (Pl.'s Mem. 36; Tr. 35-45). Significantly, this report by Dr. Saundra Dalton includes diagnoses of GERD, anorexia nervosa, and palpitations. (Tr. 36). Like those diagnoses from the Oxford reports, these diagnoses had also already been noted in the record and the ALJ had found that Plaintiff had the severe impairment of an eating disorder and the non-severe impairment of GERD. (Tr. 153). Further, this report originated not only after the ALJ hearing decision, but over a year after Plaintiff's date last insured. Given both that the ALJ had already noted these impairments and the remoteness in time from Plaintiff's date last insured, this report does not create a reasonable possibility that it would change the administrative outcome and is thus immaterial.

The Appeals Council, in its Notice of Action, stated that it in fact reviewed the treatment records provided from Grandview Behavioral Center, Oxford Surgery Clinic, and Anniston Medical Clinic. (Tr. 2). Thus, the court finds the Appeals Council did not err for "refusing to review" these documents as Plaintiff contends. The court also finds that, because the records from Oxford Surgery Clinic and Anniston Medical Clinic (Plaintiff does not comment on the records from Grandview Behavioral Center) were immaterial, the Appeals Council had no duty to review the case to determine whether the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record" in accordance with 20 C.F.R. § 404.970(b).

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed.  A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this September 22, 2016.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE